## UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF FLORIDA

Case No. 09-14019-CIV-MOORE/LYNCH

STEPHEN G. LOFTUS,
DYLAN LOFTUS, and SAVONNA
LOFTUS, Minors by and through
STEPHEN G. LOFTUS, the natural
father, guardian and next friend,

      Plaintiffs,

vs.

ESTER CLARK-MOORE,
MYRA FERGUSON, and
FAMILY OF PRESERVATION SERVICES
OF FLORIDA, INC.,

      Defendants.

_____/

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

THIS CAUSE came before the Court upon Defendants' Motion to Dismiss (dkt # 26).

UPON CONSIDERATION of the Motion, the Response, the pertinent portions of the record,

and being otherwise fully advised in the premises, the Court enters the following Order.

## I.    BACKGROUND

This case involves a father who alleges that a state agency, through a contractor, violated his

family's constitutional rights by interfering with his right to make decisions concerning the care,

custody and control of his children. Plaintiff Stephen G. Loftus ("Loftus") is the father of minors

Dylan Loftus ("Dylan") and Savonna Loftus ("Savonna").[1]  On September 10, 2008, Loftus filed a

private Petition for Dependency in the Nineteenth Judicial Circuit Court of Florida based on

_____

[1] The facts are taken primarily from the Amended Complaint (dkt # 18).

concerns of child abuse being perpetrated by Dylan and Savonna's mother.[2]  Prior to filing the

Petition for Dependency, Loftus had been awarded full custody of Dylan and Savonna in a divorce

action, and the childrens' mother had been given restricted, supervised visitation rights.

Pursuant to the Petition for Dependency, Defendant Family Preservation Services of Florida,

Inc. ("FPS") commenced an investigation to assess the condition of Dylan and Savonna.[3]  Defendant

Ester Clark-Moore ("Moore"), an employee of FPS, visited Loftus' home to meet with Dylan and

Savonna, but Loftus advised Moore that "he did not want anyone talking with his children without

his knowledge or permission because the children had suffered extreme emotional stress."  Am.

Compl., ¶ 17.  On October 31, 2008, Moore visited Savonna's school and interviewed her without

Loftus' consent.  Loftus complained about Moore's actions to Defendant Myra Ferguson

("Ferguson"), Moore's supervisor.  Ferguson responded by "threaten[ing] [Loftus] with the removal

of the children from his care and control."  Id. ¶ 21.  Ferguson called Loftus on November 19, 2008,

and stated that "they were coming that day to take custody of the two minor children."  Id. ¶ 22.

Ferguson called Loftus again on November 20, 2008, and "told him to take the children to the police

station so that they could take custody of the children."  Id. ¶ 23.  Without elaborating on any further

---

[2] A Petition for Dependency initiates a dependency proceeding, which is usually based on allegations of abuse, abandonment or neglect of a child.  The term "dependency" refers to the notion of the child being dependent upon the state to provide the necessary help and services required to ensure the safety and welfare of the child. Guide for Families in Dependency Proceedings, Family Court Services, Court Administrations, Seventh Judicial Circuit of Florida, at 7, http://www.circuit7.org/Communications/dependency%20brochure%207-06.pdf,, last viewed June 25, 2009.

[3] FPS has a contract with United for Families, Inc. to provide child welfare services to clients of United for Families, Inc. who are referred to them by the Florida Department of Children and Families. United for Families, Inc. has a contract with the Florida Department of Children and Families, the state agency whose mission it is to "Protect the Vulnerable, Promote Strong and Economically Self-Sufficient Families, and Advance Personal and Family Recovery and Resiliency." See DCF Mission Statement, http://www.dcf.state.fl.us/transition/mission.shtml, last viewed June 25, 2009.

details, Loftus also alleges that "[f]rom October 7, 2008, to February 2009, Moore and Ferguson engaged in a course of conduct designed and intended to harass and intimidate Loftus by frequent, unnecessary home visits, interrogation of Loftus and the children and threats to remove the children from his custody." Id. ¶ 24.

Loftus filed the original Complaint (dkt # 1) in this matter on January 20, 2009. An Amended Complaint (dkt # 18) was filed on April 29, 2009. Plaintiffs allege that Moore and Ferguson violated Plaintiffs' Fifth and Fourteenth Amendment rights by intruding into Plaintiffs' home life, meeting with the children, and threatening to remove the children from the home. Plaintiffs further allege that Savonna's Fourth Amendment rights were violated by the interview that Moore conducted at the school without Loftus' consent and that FPS is liable for Moore and Ferguson's conduct based on a failure to train. On May 12, 2009, Defendant's filed this Motion to Dismiss (dkt # 26).

## II.    STANDARD OF REVIEW

A motion to dismiss for failure to state a claim merely tests the sufficiency of the complaint; it does not decide the merits of the case. Milburn v. United States, 734 F.2d 762, 765 (11th Cir. 1984). On a motion to dismiss, the Court must accept the factual allegations as true and construe the complaint in the light most favorable to the plaintiff. SEC v. ESM Group, Inc., 835 F.2d 270, 272 (11th Cir. 1988). "Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). A complaint must contain enough facts to indicate the presence of the required elements. Watts v. Fla. Int'l Univ., 495 F.3d 1289, 1302 (11th Cir. 2007). "[C]onclusory allegations, unwarranted deductions of fact or legal conclusions masquerading as facts will not prevent dismissal." Oxford Asset Mgmt., Ltd. v. Jaharis,

3

297 F.3d 1182, 1188 (11th Cir. 2002).  However, as long as the allegations rise above a speculative level, a well-pleaded complaint will survive a motion to dismiss "'even if it appears that a recovery is very remote and unlikely.'"  Conley v. Gibson, 355 U.S. 41, 45-46 (1957), *overruled on other grounds by* Twombly, 550 U.S. at 556 (citation omitted).

## III.   ANALYSIS

### A.  Qualified Immunity

Defendants claim that Moore and Ferguson are shielded from liability by qualified immunity. "Qualified immunity offers a complete protection for government officials sued in their individual capacities if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Gray ex rel. Alexander v. Bostic, 458 F.3d 1295, 1303 (11th Cir. 2006) (internal quotation marks omitted).  In establishing qualified immunity, an official must first establish that the challenged conduct was within the scope of his or her discretionary authority.  Id. (citing Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002)).  Once a defendant makes this showing, the burden shifts to the plaintiff.  Id. (citing Lumley v. City of Dade City, 327 F.3d 1186, 1194 (11th Cir. 2003)).  The Supreme Court has established a two-part test to determine whether an official is entitled to qualified immunity.  First, it is necessary to determine whether, viewing the facts in a light most favorable to the plaintiffs, a constitutional violation has been established.  Id. (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)).  Second, if this question is answered in the affirmative, a court must determine whether the right infringed upon was clearly established.  Id.  If so, an official is not entitled to qualified immunity.

#### 1.  Discretionary Authority

Moore and Ferguson's conduct was within the scope of their discretionary authority.  "To

4

establish that the challenged actions were within the scope of [an official's] discretionary authority, a defendant must show that those actions were (1) undertaken pursuant to the performance of [their] duties, and (2) within the scope of [their] authority." Harbert Int'l v. James, 157 F.3d 1271, 1282 (11th Cir. 1998). Pursuant to this inquiry, "a court must ask whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties." Id. (quotation marks omitted). Here, Plaintiffs challenge Moore's visits to the Loftus home and her interview with Savonna, as well as Ferguson's communications with Loftus concerning removal of the children from the home. Plaintiffs construe these acts, without giving further detail, as a pattern of conduct occurring between October of 2008 and February of 2009.

Moore's visits to the Loftus' home seeking permission to speak with the children, and her visit to the school during which she interviewed Savonna, fall squarely within Moore's duties. Moore was seeking information concerning the status of the children pursuant to a Petition for Dependency, the sole purpose of which is to determine the nature of the assistance, if any, a child requires from the state to protect his or her safety and welfare. It goes without saying that one of the primary ways to ascertain the condition of a child is to speak with the child, and Moore was the officer ultimately tasked by the state to do so. Therefore, Moore's conduct was within the scope of her duties and within the scope of her authority.

Ferguson's communications with Loftus began when he contacted her to complain about Moore. As Moore's supervisor, Ferguson was acting within the scope of her duties when she responded to Loftus' complaints. With respect to Ferguson's statements that the children would be removed from the home, Ferguson's conduct was related to her core function as an officer of FPS and therefore was within the scope of her duties and within the scope of her authority.

5

### 2. Constitutional Violations

In light of the challenged conduct being with the scope of Moore and Ferguson's duties, it is necessary to determine whether, taking the facts in the light most favorable to the Plaintiffs, this Court could find that a constitutional violation occurred and, if so, whether the rights infringed upon were clearly established.

### a. Fourth Amendment Claim

Plaintiffs claim that Moore's interview with Savonna at school violated her Fourth Amendment right to be free from unreasonable search and seizure. The Fourth Amendment, incorporated against the states by the Fourteenth Amendment, Bates v. Harvey, 518 F.3d 1233, 1243 (11th Cir. 2008), provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Cont. amend. IV. The Fourth Amendment's prohibition against unreasonable searches and seizures applies to civil as well as criminal investigations. Lenz v. Winburn, 51 F.3d 1540, 1548 n.7 (11th Cir. 1995). Thus, the Fourth Amendment applies to child welfare workers. Doe v. Heck, 327 F.3d 492, 510 (7th Cir. 2003).

The threshold question in a Fourth Amendment analysis is whether the conduct at issue constitutes a search or seizure. U.S. v. Robinson, 625 F.2d 1211, 1215 (5th Cir. 1980). Here, Plaintiffs allege that Moore's interview with Savonna at her school, and without parental consent, violated her Fourth Amendment rights. The facts alleged satisfy Rule 8 by sufficiently pleading a short and plain statement of the facts. However, the Complaint makes no mention of a number of facts relevant to determining whether a Fourth Amendment violation may have occurred here, including the precise circumstances of the interview, Savonna's age, and whether the school was

6

public or private. See Heck, 327 F.3d at 509-15 (finding a Fourth Amendment violation where an eleven-year-old child at a private school was interviewed by a child welfare worker without parental consent, and noting the relevance of the different expectations of privacy at public and private schools); Cornigans v. Mark Country Day School, No. CV 03-1414 (DLI)(WDW), 2006 WL 3950335, at *7 (E.D.N.Y. July 12, 2006) (finding no constitutional violation where five-year-old child was interviewed at a private school without parental consent by a caseworker and a police detective). Nevertheless, viewing the available facts in a light most favorable to the Plaintiffs, this Court cannot find as a matter of law at this stage that there are no circumstances consistent with the facts as pled that constitute an unreasonable seizure in violation of the Fourth Amendment. Thus, for qualified immunity purposes, this Court will assume that Moore's interview with Savonna was a Fourth Amendment violation.

> b. Fourteenth Amendment Substantive Due Process Claim

Plaintiffs claim that Moore and Ferguson's conduct constituted a Fourteenth Amendment substantive due process violation.[4] "'[T]he touchstone of due process is protection of the individual against arbitrary action of government.'" County of Sacramento v. Lewis, 523 U.S. 833, 845 (1998) (quoting Wolff v. McDonnell, 418 U.S. 539, 558 (1974)). Substantive due-process rights guard against the government's "exercise of power without any reasonable justification in the service of a legitimate government objective." Id. at 845. "[O]nly the most egregious official conduct can be

---

[4] The substantive due process claim necessarily excludes Moore's interview with Savonna at school because "a substantive due process claim may not be called upon when a specific constitutional provision (here, the Fourth Amendment) protects the right allegedly infringed upon." Heck, 327 F.3d at 519 n.23; see also Albright v. Oliver, 510 U.S. 266, 273 (1994) (stating that "[w]here a particular Amendment provides an explicit source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing [the] claims") (internal quotation marks omitted).

said to be arbitrary in the constitutional sense." Id. (internal quotations marks omitted); see Cockrell v. Sparks, 510 F.3d 1307, 1311 (11th Cir. 2007) (stating that government action will only violate substantive due process when it is so egregious that it shocks the conscience). Thus, "[i]n a substantive due process claim, we are concerned with those rights which the state may not take away." Taylor v. Ledbetter, 818 F.2d 791, 794 (11th Cir. 1987); see also Tenenbaum v. Williams, 193 F.3d 581, 600 (2d Cir. 1999) (stating that a substantive due process violation only occurs when the government action is so "shocking, arbitrary, and egregious that the Due Process Clause would not countenance it even if it were accompanied by full procedural protection"); Bendiburg v. Dempsey, 909 F.2d 463 (11th Cir. 1990) (stating that "substantive due process prohibits the government from engaging in certain activities regardless of the procedure used to implement that activity") (internal quotation marks omitted).

The Supreme Court has held that, as a component of substantive due process, there is a right to familial relations ensuring that "parents have a constitutionally protected liberty interest in the care, custody and management of their children." Doe v. Kearney, 329 F.3d 1286, 1293 (11th Cir. 2003) (citing Santosky v. Kramer, 455 U.S. 745, 758-59 (1982)); see Troxel v. Granville, 530 U.S. 57, 65 (2000) (noting that a parent's interest in care, custody and control of their children is perhaps the oldest of the fundamental liberty interests). "Weighing against that relationship, is the State's 'profound interest in the welfare of the child, particularly his or her being sheltered from abuse.'" Sansbury v. Dep't of Children & Family Servs., No. 2:04-cv-509-FtM-99DNF (JES), 2006 WL 4960054, at *7 (M.D. Fla. Nov. 3, 2006) (quoting Kearney, 329 F.3d at 1293) (internal quotation marks omitted). The liberty interest in familial privacy "does not include the right to be free from child abuse investigations." Heck, 327 F.3d at 520 (citing Brown v. Newberger, 291 F.3d 89, 94 (1st

8

Cir. 2002)). "When analyzing a familial relations claim, a 'balance must be reached between the fundamental right of the family unit and the state's interest in protecting children from abuse . . . .'" Heck, 327 F.3d at 520 (quoting Brokaw v. Mercer County, 235 F.3d 1000, 1019 (7th Cir. 2000)).

Here, Plaintiffs allege that Moore and Ferguson's conduct, including Moore's visits to Loftus' home and Ferguson's threats to remove Savonna and Dylan from the home, violated their substantive due process right to familial relations. "'Substantive due process analysis must begin with a careful description of the asserted right.'" Lofton v. Sec'y of Dep't of Children and Family Servs., 358 F.3d 804, 816 (11th Cir. 2004) (quoting Reno v. Flores, 507 U.S. 292, 302 (1993)) (internal quotation marks omitted). The rights asserted here appear to be (1) for an individual who initiates a Petition for Dependency to be free from visits by caseworkers seeking to assess the safety and welfare of the children who are the subject of the petition, and (2) for an individual to be free from threats that the children may be removed from the home.

With respect to Moore's visits to Loftus' home, there is nothing egregious, or even unusual, about a caseworker's visit to a home to interview children who are the subjects of a Petition for Dependency. Indeed, the very purpose of the petition is to request assistance from the state to ensure the safety and welfare of the children who are the subjects of the petition. Caseworkers are the agents deployed by the state to assess the condition of the children and to make recommendations concerning their needs. Thus, ordinary visits by caseworkers to the home, where the children who are the subjects of a Petition for Dependency reside, do not violate a liberty interest in familial relations.

As to Ferguson's communications to Loftus, Loftus alleges that Ferguson threatened to remove his children from the home, stated that they were coming to remove the children, and that

9

she ordered him to bring the children to the police station. The "most essential and basic aspect of familial privacy [is] the right of the family to remain together without the coercive interference of the awesome power of the state." Duchesne v. Sugarman, 566 F.2d 817, 825 (2d Cir. 1977). "'The interest in being protected is not only that of the parent in the companionship, care and custody of the children, [but also] of the children in not being dislocated from the emotional attachments that derive from the intimacy of daily association with the parent.'" Heck, 327 F.3d at 524 (quoting Duchesne, 566 F.2d at 825) (internal quotation marks omitted). "We recognize that child welfare workers are often called upon to make difficult decisions without the benefit of extended deliberation." Heck, 327 F.3d at 524. "This unquestionably compelling state interest, however, may not be used as a pretense for arbitrary governmental intrusion into the private affairs of its citizens." Id.

Viewing the facts in the light most favorable to the Plaintiffs, this Court will construe Ferguson's remarks as arbitrary threats or as a coercive means of securing Loftus' cooperation with the FPS investigation. Thus, for purposes of the qualified immunity analysis, the question is whether threats to remove children from a home, absent a reasonable belief that the child has been abused or that the child is in imminent danger, violates a family's liberty interest in familial relations. In the absence of a reasonable belief to the contrary, "'there is a [constitutional] presumption that fit parents act in the best interests of their children.'" Heck, 327 F.3d at 524 (quoting Troxel, 530 U.S. at 68).

Here, there is nothing to suggest that Moore or Ferguson had a reasonable belief that Loftus abused his children or that they were in imminent danger of abuse while in his custody. See Brokaw, 235 F.3d at 1019 (holding that "a state has no interest in protecting children from their parents unless it has some definite and articulable evidence giving rise to a reasonable suspicion that a child has

10

been abused or is in imminent danger of abuse"). Moreover, Loftus' status as Petitioner in the

Petition for Dependency supports his status as a fit parent, given that it would be unlikely for a child

abuser to invite the scrutiny that a Petition for Dependency creates. Thus, construing Ferguson's

comments as arbitrary threats or as a means of coercion, these comments constitute a substantive due

process violation of the Loftus family's right to familial relations. See Heck, 327 F.3d 492 (holding

that caseworker's threats to remove children from the home violated right to familial relations);

Miller v. City of Philidelphia, 174 F.3d 368, 376 (3d Cir. 1999) (holding that social worker's threats

to remove child from home if the father did not leave effectively removed the child from parental

custody); Croft v. Westmoreland County Children & Youth Servs., 103 F.3d 1123, 1124-27 (3d Cir.

1997) (finding that right to familial relations was violated when caseworker threatened to remove

child from the home if the father did not separate himself from the child until the investigation was

complete).[5] Finally, although Plaintiffs allege a pattern of harassment, there are insufficient factual

allegations to support a course of conduct that, in the aggregate, could constitute a substantive due

process violation.

### 3. Whether the Rights Infringed Upon Are Clearly Established

Given that the Amended Complaint, taken in a light most favorable to Plaintiffs, sufficiently

pleads constitutional violations of the Fourth and Fourteenth Amendments, it is necessary to

---

[5] Plaintiffs' Amended Complaint asserts substantive due process claims, but raises no procedural due process claims. The Amended Complaint states that Savonna's right "to substantive due process w[as] violated by Moore and Ferguson by their repeated intrusions into the home life of Loftus, their continued interrogation of the children of Loftus and by their threats to take Savonna away from her home and father." Am. Compl., ¶ 31. Dylan's substantive due process claim relies on the same grounds as those of Savonna. Am. Compl., ¶ 32. Loftus asserts that "[h]e enjoyed a fundamental liberty interest in the care, custody and control of his children as guaranteed by subtantive due process." Am. Compl., ¶ 27. The Amended Complaint makes no mention of a procedural due process claim and this Court is unable to infer any claims based on procedural due process.

determine whether the rights infringed upon are clearly established.

> For a constitutional right to be clearly established, its contours 'must be sufficiently
> clear that a reasonable official would understand that what he is doing violates that
> right. This is not to say that an official action is protected by qualified immunity
> unless the very action in question has previously been held unlawful, but it is to say
> that in light of pre-existing law the unlawfulness must be apparent.'

Hope v. Pelzer, 536 U.S. 730, 741 (2002) (quoting Anderson v. Creighton, 483 U.S. 635, 640

(1987)) (internal citation omitted); see also Sanders v. Howze, 177 F.3d 1245, 1249 (11th Cir. 1999)

("For a right to be 'clearly established,' previous case law must have developed it in a concrete

factual context so as to make it obvious to a reasonable government actor that his actions violate

federal law."). "Whether applicable law was clearly established at the time of the challenged action

is determined by reference to decisions of the United States Supreme Court, the Court of Appeals for

the Eleventh Circuit or the Supreme Court of Florida." Id. (citing Mercado v. City of Orlando, 407

F.3d 1152, 1159 (11th Cir. 2005)). These decisions must present facts that are "'materially similar

. . . and therefore provided clear notice of the violation' or [discuss] 'general rules of law from a

federal constitutional or statutory provision or earlier case law that applied with obvious clarity to the

circumstances." Trammell v. Thomason, No. 08-13801, 2009 WL 1706591, at *5 (11th Cir. June

18, 2009) (quoting Long v. Slaton, 508 F.3d 576, 584 (11th Cir. 2007)) (internal quotation marks

omitted).

### a. Fourth Amendment

Here, the question is whether a reasonable caseworker would be on notice that the

interrogation of a minor on school property during school hours, without parental consent and after

such consent has been requested and denied, constitutes a Fourth Amendment violation. This Court

has found no cases in the United States Supreme Court, the Court of Appeals for the Eleventh

Circuit or the Supreme Court of Florida addressing the issue of whether the interrogation of a child on school property and without parental consent constitutes an unreasonable seizure. Although this Court has cited a number of cases from other jurisdictions addressing this issue, those decisions are not relevant here because an inquiry into a state officer's reasonable understanding of the constitutional dimensions of his or her duties necessarily focuses on the law that serves as precedent in the geographic area where those duties are conducted. Moreover, the particularized expectation of privacy considerations when dealing with a seizure in a school, whether public or private, and the fact that Savonna was never physically removed from the school, prevent this Court from adequately analogizing from seizures of minors that occur in other places, such as in the home or in a public place. Nor is this Court able to draw on cases dealing with searches of students in schools to conclusively determine that the right infringed upon here was clearly established because those cases are not materially similar to the circumstances here. See Safford Unified Sch. Dist. No. 1 v. Redding, __ S. Ct. __, 2009 WL 1789472 (June 25, 2009); New Jersey v. T.L.O., 469 U.S. 325 (1985). Given the dearth of relevant case law that is materially similar to the facts here, the Fourth Amendment rights at stake here are not clearly established. Accordingly, Moore and Ferguson are entitled to qualified immunity on the Fourth Amendment claim.

        b. Fourteenth Amendment

      The question here is whether a caseworker's threat to a parent that a child will be removed from the home, where the caseworker lacks a reasonable belief that the parent has abused the child or that the child is in imminent danger while in the custody of the parent, constitutes a violation of a family's right to familial relations. While there are a number of cases in other jurisdictions holding that such threats violate the right to familial relations, there is no case law relevant to this analysis

13

that places a reasonable child welfare worker on notice that such conduct is clearly unconstitutional. See Frazier v. Bailey, 957 F.2d 920, 931 (1st Cir.1992) (stating that state officials who investigate cases in an attempt to protect children from abuse almost never act within contours of clearly established law); Foy v. Holston, 94 F.3d 1528 (11th Cir.1996) (stating that it is no surprise that state officials who investigate allegations of child abuse and in so doing disrupt a family have been entitled to qualified immunity); see also Sansbury v. Dep't of Children & Family Servs., No. 2:04-cv-509-FtM-99DNF (JES), 2006 WL 4960054, at *8 (M.D. Fla. Nov. 3, 2006).  Therefore, Moore and Ferguson are entitled to qualified immunity on the Fourteenth Amendment claim.

B. Failure to Train

Plaintiffs contend that FPS is liable for its failure to train its employees in the constitutional limitations of their duties.  The Florida Department of Children and Families ("DCF") is a state agency.  Washington v. Fla. Dept. of Children & Families, No. 8:08-cv-48-T-33TBM (VMHC), 2009 WL 790142, at *10 (M.D. Fla. Mar. 23, 2009).  As such, it is not a "person" subject to suit under 42 U.S.C. § 1983.  Will v. Mi. Dep't of State Police, 492 U.S. 58, 66-67 (1989).  "'The Eleventh Amendment bars such suits unless the State has waived its immunity.'"  Washington, 2009 WL 790142, at *10 (quoting Will, 492 U.S. at 66).  "This prohibition extends to state agencies, state officials in their official capacity, and other arms of the state," as well as other state instrumentalities. Id. (citing cases); see Vierling v. Celebrity Cruises, Inc., 339 F.3d 1309, 1314 (11th Cir. 2003). Florida has not consented to be sued or waived their Eleventh Amendment immunity to § 1983 claims in federal court.  Id. (citing Gamble v. Fla. Dep't of Health & Rehab. Servs., 779 F.2d 1509, 1515-16 (11th Cir. 1986).  Thus, the Eleventh Amendment bars claims for civil rights damages against DCF.  Id.

14

Here, Plaintiffs' claims proceed upon the assumption that FPS is a state actor, or arm of the state, and Defendants do not suggest otherwise. See Pl.'s Resp. to Def.'s Mot. to Dismiss, at 8 ("It is Plaintiffs' position that the child abuse investigation was conducted without lawful authority and that any reasonable State Actor would have known that they were operating without legal authority."); Am. Compl., ¶¶ 37-38 (stating that "[t]he Company failed and neglected to train Moore and Ferguson in the constitutional limitations invariably imposed on the exercise of their official power and authority," and that FPS "violated the constitutional rights of Plaintiffs"). Thus, the Parties agree that FPS acts as a state actor in the same capacity as DCF. Therefore, it follows that as an arm of the state, FPS is entitled to Eleventh Amendment immunity.

## IV. CONCLUSION

For the foregoing reasons, it is

ORDERED AND ADJUDGED that Defendants' Motion to Dismiss (dkt # 26) is GRANTED.

DONE AND ORDERED in Chambers at Miami, Florida, this 7*th* day of July, 2009.

K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

cc:    All counsel of record

15